## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**RAYMOND T. HATFIELD,**
**Claimant Below, Petitioner**

**vs.)   No. 21-0342** (BOR Appeal No. 2056021)
                    (Claim No. 2019016349)

**HUNTINGTON ALLOYS CORPORATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Raymond T. Hatfield, by Counsel Edwin H. Pancake, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Huntington Alloys Corporation, by Counsel Steven K. Wellman and James W. Heslep, filed a timely response.

The issues on appeal are medical benefits and temporary total disability benefits. The claims administrator denied authorization of six weeks of physical therapy on August 29, 2019. On October 1, 2019, the claims administrator closed the claim for temporary total disability benefits, and on November 11, 2019, it denied a referral to Marshall Orthopedics for evaluation and treatment in the form of a total shoulder arthroplasty. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its November 12, 2020, Order. The Order was affirmed by the Board of Review on March 30, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

1

(d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Hatfield, a steelworker, injured his left shoulder while pushing up on a prybar at work on January 25, 2019. Mr. Hatfield has a long history of prior left shoulder injuries and surgeries. On February 9, 2012, a left shoulder MRI showed a posterior superior labrum tear with a paralabral cyst extending into the spinoglenoid notch, likely causing denervation and decreased signal to the teres minor muscle. Another MRI was performed on April 17, 2015, and revealed small osteophytes on the humeral head, acromioclavicular joint arthrosis with inferior spur formation, and a suspected tear in the infraspinatus tendon. It was noted that the examination was essentially undiagnostic due to motion restrictions. A repeat MRI was recommended. On April 4, 2017, a left shoulder MRI showed an interstitial tear of the infraspinatus at the myotendinous junction with an associated intraocular cyst formation. It also showed an interstitial tear of the supraspinatus tendon and a posterior labrum tear that was possibly degenerative or postoperative in etiology.

Mr. Hatfield sought treatment for his compensable injury at issue from Allen Young, M.D., on January 25, 2019. Dr. Young diagnosed left shoulder sprain and possible labral injury. Mr. Hatfield stated that he was pushing up on a prybar at work that day when the alloy in the mold gave way. Mr. Hatfield returned on January 29, 2019, and reported continued pain but a slight increase in range of motion. An MRI was recommended.

The Employees' and Physicians' Report of Injury, completed on January 29, 2019, indicated Mr. Hatfield injured his left shoulder/arm while using a prybar to remove alloy. Mr. Hatfield was diagnosed with left shoulder sprain. It was noted that the injury may have aggravated a prior injury/disease because Mr. Hatfield had four prior work-related shoulder surgeries. The claim was held compensable for left shoulder joint sprain on February 12, 2019. Temporary total disability benefits were granted from October 29, 2018, through November 15, 2018.

Mr. Hatfield underwent a left shoulder MRI on February 13, 2019, which showed degenerative changes and tearing of the bony labrum, most significant superiorly. There was also a tear of the long head of the biceps tendon and subscapularis and supraspinatus tendinosis. In a March 19, 2019, treatment note, Stanley Tao, M.D., stated that Mr. Hatfield was seen for follow-up and to schedule surgery. He was reinjured on February 25, 2019, at work. Dr. Tao diagnosed

left shoulder superior glenoid labrum lesion, subsequent encounter, and left biceps strain. Left shoulder surgery was scheduled and Mr. Hatfield was taken off of work starting March 23, 2019.

Dr. Tao performed a left shoulder arthroscopy on April 3, 2019. The pre-operative diagnosis was labral tear. The post-operative diagnoses were generalized osteoarthritis, complex labral tear, chronic biceps tear, and partial bursal-sided rotator cuff tear with impingement. In a follow-up on April 17, 2019, Mr. Hatfield reported that he was two weeks post-operation and was in a lot of pain. Mr. Hatfield was to start physical therapy and was unable to work until May 15, 2019. Mr. Hatfield returned on June 25, 2019, and reported that LV injection only provided three days of relief. Dr. Tao stated that Mr. Hatfield was to start a home exercise program and requested vocational rehabilitation. Mr. Hatfield was unable to return to work until August 28, 2019.

In an August 12, 2019, Independent Medical Evaluation, Prasadarao Mukkamala, M.D., diagnosed left shoulder sprain and status post arthroscopic posterior labral repair, acromioplasty, and debridement, as well as smoothing of a rotator cuff tear. Mr. Hatfield had reached maximum medical improvement, and Dr. Mukkamala opined that he needed no further treatment. He stated that Mr. Hatfield could return to work at a medium physical demand level with the restrictions of no overhead activities with the left arm and no lifting more than twenty-five pounds frequently and fifty pounds occasionally. Dr. Mukkamala assessed 5% left shoulder impairment. Mr. Hatfield had already received a 3% award for the left shoulder in a prior claim, so Dr. Mukkamala recommended an additional 2% award.

In an August 27, 2019, treatment note, Dr. Tao stated that Mr. Hatfield continued to have left shoulder pain and limited range of motion. Dr. Tao disagreed with Dr. Mukkamala's finding of maximum medical improvement. He stated that the standard recovery time for a labral repair is six months. Mr. Hatfield was to continue his exercise program and reassess in two months. He could not return to work until October 29, 2019. On August 29, 2019, the claims administrator denied authorization for six weeks of physical therapy. The claims administrator closed the claim for temporary total disability benefits on October 1, 2019. Mr. Hatfield was granted a 1% permanent partial disability award on October 4, 2019. The claims administrator noted that Mr. Hatfield had previously been awarded 4% in permanent partial disability awards. On November 11, 2019, the claims administrator denied a referral to Marshall Orthopedics to evaluate and treat for total shoulder arthroplasty. Mr. Hatfield underwent a left shoulder x-ray on December 11, 2019, which showed diminishing joint space and a small inferior osteophyte on the humerus, as well as a subchondral cyst in the glenoid.

Mr. Hatfield testified in a January 16, 2020, deposition that he had four work-related left shoulder injuries prior to the injury at issue. He started missing work for the compensable injury on March 23, 2019. He had surgery on April 3, 2019, and had not yet been released to return to work. Mr. Hatfield stated that Dr. Tao, who treated him for all of his left shoulder injuries, referred him to Dr. Jasko. Dr. Jasko stated that the only treatment that would help would be a total shoulder replacement. Mr. Hatfield testified that Dr. Tao told him that his shoulder was full of arthritis. Mr. Hatfield stated that he was unable to do much with his left arm. On February 27, 2020, Mr. Hatfield had a left upper extremity CT scan which showed osteoarthritis.

3

In a March 10, 2020, Independent Medical Evaluation, David Jenkinson, M.D., opined that there was no evidence that Mr. Hatfield suffered more than a sprain or strain of the left shoulder as a result of the compensable issue. He noted that Mr. Hatfield had multiple surgeries as well as age-related degenerative changes. Dr. Jenkinson opined that a total left shoulder replacement was not necessary or reasonable treatment for the compensable injury. He stated that though he had not personally reviewed the x-rays, a review of the available documents indicated Mr. Hatfield did not have arthritic deterioration in the left shoulder sufficient to require a total joint replacement. He found that Mr. Hatfield's complaints were out of proportion to his objective findings. Dr. Jenkinson asserted that Mr. Hatfield required no further treatment and had reached maximum medical improvement. He opined that Mr. Hatfield could return to work with no restrictions.

In a July 16, 2020, Addendum to his evaluation, Dr. Jenkinson stated that he was provided with Mr. Hatfield's MRI, CT scan, and x-rays. The x-rays showed some arthritic changes in the glenohumeral joint and mild subchondral sclerosis on the humeral and glenoid side of the joint. Dr. Jenkinson noted that Dr. Jasko diagnosed end-stage arthritis in his post-surgery notes. Dr. Jenkinson stated that his opinion had not changed. The compensable injury did not cause structural injuries to Mr. Hatfield's left shoulder. He noted that Mr. Hatfield had left shoulder surgeries prior to the compensable injury. Dr. Jenkinson opined that the diagnostic studies showed some degenerative changes but nothing severe enough to require a total shoulder replacement. He disagreed with Dr. Jasko's diagnosis of end-stage arthritis and opined that Mr. Hatfield was not a good candidate for a total left shoulder replacement.

The Office of Judges affirmed the claims administrator's decisions denying authorization for six weeks of physical therapy, closing the claim for temporary total disability benefits, and denying referral to Marshall Orthopedics to evaluate and treat for total shoulder arthroplasty in its November 12, 2020, Order. The Office of Judges first addressed temporary total disability benefits. It found that Dr. Mukkamala determined in his August 12, 2019, evaluation that Mr. Hatfield had reached maximum medical improvement for his compensable injury. Dr. Jenkinson concurred. Dr. Tao disagreed and stated that the normal time period for recovery from a labral tear is six months. However, the Office of Judges found that labral tear was not a compensable condition in the claim. It therefore concluded that Mr. Hatfield reached maximum medical improvement by August 12, 2019. Accordingly, the claim was properly closed for temporary total disability benefits.

Regarding physical therapy and an evaluation for a total left shoulder arthroplasty, the Office of Judges found that the claim has been held compensable for a left shoulder strain. Further, he had reached maximum medical improvement for the injury. Dr. Jenkinson found no evidence that Mr. Hatfield sustained a structural injury on January 25, 2019, and noted that Mr. Hatfield underwent multiple left shoulder surgeries prior to the compensable injury and that he suffered from some deterioration in the left shoulder. The Office of Judges found that there was no basis to attribute the arthritic changes to the compensable injury. The Office of Judges concluded that the request for referral to Marshall Orthopedics to evaluate and treat for a total shoulder arthroplasty was properly denied. The Office of Judges also affirmed the denial of physical therapy because Mr. Hatfield had reached maximum medical improvement. Further, Drs. Mukkamala and Jenkinson both opined that further treatment was not necessary. The Board of Review adopted the

4

findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 30, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-7a, temporary total disability benefits will cease when Mr. Hatfield has reached maximum medical improvement, has been released to return to work, or has returned to work, whichever occurs first. A preponderance of the evidence indicates that Mr. Hatfield reached maximum medical improvement for his compensable injury, as found by Drs. Mukkamala and Jenkinson. West Virginia Code § 23-4-3(a)(1) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. The evidence indicates that the requested total shoulder arthroplasty and physical therapy are not necessary treatment for the compensable left shoulder strain.

Affirmed.

**ISSUED: September 19,2022**

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING**:

Chief Justice John A. Hutchison

Chief Justice John A. Hutchison would set the case for Rule 19 oral argument.

5